IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARDWEANOR JENNINGS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:20-cv-03462-M |
| DALLAS HOUSING AUTHORITY, | § § § | |
| Defendant. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant's Motion for Summary Judgment (ECF No. 11) and Defendant's Objections to Plaintiff's Summary Judgment Evidence (ECF No. 16). For the following reasons, the Defendant's Objections are GRANTED IN PART and DENIED IN PART, and Defendant's Motion for Summary Judgment is GRANTED.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Lardweanor Jennings began working at the Dallas Housing Authority ("DHA") in January of 2009, as a Resident Services Coordinator. Def.'s App. (ECF No. 13) at 1 ("Tharp Aff.") ¶ 5. The Resident Services Coordinator is responsible for facilitating activities that serve residents' recreational, health, and educational needs, explaining DHA programs, and "establishing working relationships with outside social service agencies to create social programming and on-site seminars" for residents. Tharp Aff. ¶ 16. On April 10, 2018, Jennings began a medical leave of absence due to a back injury. Pl.'s App. (ECF No. 15) at 1. On April 12, 2018, DHA's Human Resources Director, Monica Tharp, confirmed Jennings' status by email, and informed Jennings of her rights under the Family Medical Leave Act ("FMLA"),

1

encouraging her to request a reasonable accommodation for a disability, if needed. Def.'s App. at 11. Not later than April 25, 2018, Jennings' physician, Dr. William Hwang, submitted to the DHA a "Certification of Healthcare Provider for Employee's Serious Health Condition," pursuant to the FMLA. *Id.* at 13–14. Dr. Hwang indicated that Jennings could not perform any of her job duties. *Id.* On April 27, 2018, Jennings' request for Short Term Disability benefits was approved. *Id.* at 18. Over the course of several evaluations, Dr. Hwang certified that Jennings needed to be off work for several months, and, in June of 2018, he certified that Jennings needed to be off work for another year. *Id.* at 14, 18, 24, 29.

The DHA had a written "Length of Any Leave of Absence" policy:

> Except as otherwise required by law, any leave of absence, for any reason, may not last more than 6 months. If an employee does not return to work 6 months after the start of any leave of absence, his/her employment will automatically terminate.

*Id.* at 67, 70.

Tharp communicated this policy to Jennings in the April 12, 2018, email to Jennings. *Id.* at 70. At no point after beginning medical leave did Jennings request an accommodation to return to work.

In July of 2018, while she was on medical leave, Jennings requested to meet with Tharp to make a harassment complaint against Jennings' supervisor, Rachel Pollard. Tharp Aff. ¶¶ 23–24. Jennings claimed that Pollard discussed Jennings' disability and leave of absence with other DHA employees. *Id.* Jennings submitted that, after a DHA property manager requested to work additional hours or to hire a temporary employee to replace Jennings, Pollard stated, "[Y]ou won't be needing any help because if [Jennings] is not back by August, 1, 2018[,] August 2nd, I'm filing paperwork for her termination and for what she went out for she's been out too long

2

any way for that." *Id.*. On July 27, 2018, DHA began investigating Jennings' complaint, and ultimately disciplined Pollard. *Id.* ¶ 26.

On October 19, 2018, six months and nine days after Jennings began her leave, Tharp terminated Jennings, citing the company's leave policy, which she had previously communicated to Jennings before Jennings' complaint of alleged retaliation by Pollard. Def.'s App. at 34. Jennings offered no evidence that Pollard was involved in Jennings' termination.

On October 19, 2020, Jennings brought claims against in state court against DHA for retaliation, disability discrimination, and wrongful termination. On November 20, 2020, DHA removed the case. DHA seeks summary judgment on all of Jennings' claims.

## II. OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

In its Reply, DHA moves to strike evidence filed with Jennings' Response to Defendant's Motion for Summary Judgment. DHA objects to the Court relying on Jennings' Affidavit because it is unsigned, and to portions of the Affidavit of Latonya Coleman-Smith, Jennings' colleague, as hearsay.

The Court grants DHA's motion to strike Jennings' Affidavit in its entirety because it is unsigned and undated.

DHA objects to Paragraph four of the Coleman-Smith Affidavit, which states:

> In our conversation Aretha [Jennings' coworker] told us that Rachel had stated if [Jennings] is not back by August 1st, then on August 2nd she was going to be filing termination paper especially for what she is out for she's been out to [sic] long and I told [Jennings] I heard Rachel saying she was going to fire you if you are not back by August 1st.

Coleman-Smith Aff. ¶ 4 (Pl.'s App. at 7).

Paragraph four of Coleman-Smith's Affidavit is stricken as inadmissible hearsay. Under Federal Rule of Civil Procedure 56, an affidavit must "set out facts that would be admissible in

3

evidence." Fed. R. Civ. P. 56(c). Statements allegedly made to Coleman-Smith by a coworker about statements made by Jennings' supervisor are double hearsay and inadmissible.

### III. MOTION FOR SUMMARY JUDGMENT

DHA moves for summary judgment on all of Jennings' claims—retaliation, disability discrimination, and wrongful termination.

#### A. Legal Standard

Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden to prove that no genuine issue of material fact exists, but this does not require negating elements of the nonmoving party's case. *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).

The burden then shifts to the nonmoving party to show that summary judgment is not warranted. *Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmoving party must go beyond the pleadings and point to specific facts in affidavits, depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence will not defeat a summary judgment motion. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The court will view all facts and inferences in the light most favorable to the nonmoving party. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566 (5th Cir. 2003). However, the court "will not assume 'in the absence of any proof . . . that

the nonmoving party could or would prove the necessary facts.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075).

### B. Retaliation Claim

DHA moves for summary judgment on Jennings' claim for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"). DHA contends there is no evidence Jennings was terminated for filing a harassment complaint against Pollard.

To establish a *prima facie* case of retaliation under Title VII, a Plaintiff must show: (1) she engaged in a protected activity—in this case, reporting harassment based on her disability; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). Protected activity is opposing an unlawful practice under Title VII, by making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). An adverse employment action is a decision such as firing, denying leave, or decreasing compensation. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

If the Plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory explanation for its action. *LeMaire*, 480 F.3d at 388. If the employer articulates a legitimate non-retaliatory explanation, the burden shifts back to the employee to establish that the employer's stated reason was pretextual. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).

Jennings argues that a casual link exists between her assertion that Pollard harassed her and her termination, because they occurred in close temporal proximity, *i.e.*, she was terminated

less than three months after she complained about Pollard. She further contends in her brief that DHA did not apply its Length of Leave Policy uniformly to other employees, since some were out for longer than six months, but were not terminated. Jennings asserts that she would not have been terminated but for her report of harassment by Pollard.

The timing of Jennings' harassment report and her termination does not establish causation. The Fifth Circuit has held that six-and-a-half weeks is close enough to establish causation, but five months is too long. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020). District courts have held that a three-month gap, without more, is not sufficient to establish causation. *See, e.g.*, *Cutrer v. Tarrant Cty. Workforce Dev. Bd.*, No. 4:18-CV-00159-O, 2020 WL 6504569, at *2 (N.D. Tex. Nov. 5, 2020).

Once the employer offers a legitimate, non-retaliatory reason that explains both the adverse action and the timing, a plaintiff must offer evidence showing that the non-retaliatory explanation was pretextual. *LeMaire*, 480 F.3d at 388–89. Here, DHA offered evidence that Jennings had exhausted her leave under DHA's Length of Leave Policy and she had used up her FMLA leave, and was told the limits of her leave before the alleged protected activity occurred. Def.'s App. at 26, 69–70. Jennings responds that this legitimate, non-retaliatory explanation is pretextual because DHA did not apply its Length of Leave Policy uniformly. Jennings suggests in her brief that "Julius Randle" was on leave for more than six months, but was not terminated. The Plaintiff furnished no **evidence** about Julius Randle's alleged leave, or anything else even proving he worked for DHA.

Because DHA has stated a legitimate, non-retaliatory explanation for Jennings' termination, and Jennings has not produced evidence from which a reasonable jury could find

that explanation to be pretextual, the Court grants summary judgment for DHA on Jennings' Title VII retaliation claim.

### C. Disability Discrimination Claims

Jennings asserts claims for disability discrimination under the Americans with Disabilities Act ("ADA") and § 503 of the Rehabilitation Act of 1973 ("Rehabilitation Act"). Because there is no factual dispute about whether DHA's stated reason for terminating Jennings was legitimate and not a pretext for discrimination, DHA is entitled to summary judgment on all of Jennings' discrimination claims.

As an initial matter, Jennings does not address in her Response her claims under the Rehabilitation Act and for wrongful termination, and that constitutes abandonment of those claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). Further, there is no private right of action under the Rehabilitation Act. *Rogers v. Frito–Lay, Inc.*, 611 F.2d 1074, 1085 (5th Cir. 1980). Therefore, the Court grants summary judgment for DHA on Jennings' Rehabilitation Act and wrongful termination claims.

To establish a *prima facie* case of an ADA violation, Plaintiff must show she (1) has a disability or was regarded as disabled, (2) was qualified for the job, and (3) was subject to an adverse employment decision on account of her disability. *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021). Under the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To survive summary judgment on the issue of whether she was a qualified individual, a plaintiff must show either (1) that she could have performed the essential functions of her job despite her disability, or

7

(2) that she could have performed the essential functions of her job with a reasonable accommodation. *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 324 (5th Cir. 2021).

The parties agree that Jennings was disabled due to a back injury, but dispute whether her disability rendered her unqualified for her position as Resident Services Coordinator. Jennings admits that the essential functions of her job as Resident Services Coordinator were client-facing, and included "door to door and home visits, group meetings, [and] group settings." Jennings Depo. (ECF No. 13) at 66:19–24. She testified that it was her job "to go into the field and recruit [providers of resident] services and bring them back to the facility," that she "attended conferences, meetings, [and] trainings," and that she hosted events for clients for which she would "do the grocery shopping," requiring her to "go to the store a lot." *Id.* at 67:11–24. DHA's job description for the Resident Services Coordinator states that an employee in this role "must" be able to lift or carry up to ten pounds. Def.'s App. at 10. The evidence is undisputed that, beginning on April 9, 2018, Jennings was unable to perform any of her job functions due to her disability because she could not "lift, [or] sit, stand, or walk for extended periods of time." Def.'s App. at 13–14. It is also undisputed that attendance at work was an essential function of her job, but Jennings had not attended work for six months, and her doctor had indicated she would need an additional year off work due to her disability. *Id.* at 29.

Jennings argues that she might have been able to conduct her duties with a reasonable accommodation, and specifically says she requested an ergonomic chair before she went on short-term disability. Jennings Depo. (ECF No. 15) at 71:3–72:1. Jennings testified it was "possible" that such a chair would have enabled her to perform the essential functions of her position as Resident Services Coordinator. *Id.* at 71:17. No other accommodation was

apparently ever requested by Jennings and there is no proof that she could work after she commenced leave if she was furnished with an ergonomic chair.

At most, Jennings' testimony supports an inference that an ergonomic chair would have been a reasonable accommodation for her to perform the functions of her job for which she stayed in her office. She does not explain how a chair would have allowed her to conduct the functions of her job requiring walking, lifting, shopping, field recruiting, and attending conferences and meetings outside her office, which she admits were essential aspects of her job. *Id.* at 67:8–68:11.

Further, Jennings did not request a reasonable accommodation after she went on leave. Dr. Hwang stated that Jennings was unable to perform her job requirements due to her disability, and that she would require an additional year of leave. Def.'s App. at 14, 29. Dr. Hwang did not indicate that Jennings could perform her duties with an accommodation. Time off can be a reasonable accommodation, but indefinite leave is not a reasonable accommodation. *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016); *Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 481 (5th Cir. 2000); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996). A request for an additional year of leave is tantamount to a request for indefinite leave.

However, the Court need not resolve the question of whether Jennings was qualified for her role, because regardless of whether Jennings can show a *prima facie* case of disability discrimination, Jennings has not shown that DHA's stated grounds for terminating her employment were pretextual. If the employer produces a legitimate, non-discriminatory explanation for the adverse employment action, then the burden shifts to the employee to show that the reason is pretextual or, if that reason is legitimate, that the employee's disability was a

substantial motivating factor in the decision. *See Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018) (citing *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014)).

DHA provided evidence that it terminated Jennings not because of her disability, but because she could not come to work, and it needed a person to perform her duties. Tharp Aff. ¶¶ 25, 29. DHA contends that holding Jennings' position open for an additional year would have caused undue hardship on DHA's operations.

Jennings produced no evidence showing that DHA's non-discriminatory explanation was pretextual, nor that her disability, as opposed to her absence, was a substantial motivating factor in its decision to terminate her employment. Accordingly, the Court grants summary judgment in favor of DHA on Jennings' claim for disability discrimination.

IV.  CONCLUSION

DHA's Motion for Summary Judgment is GRANTED on all of Jennings' claims. Judgment will be entered separately.

**SO ORDERED**.

February 17, 2022.

BARBARA M. G. LYNN
CHIEF JUDGE